IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

THOMAS BURRELL, TYRONE
GRAYER, WALTER JACKSON,
MONIQUE JACKSON,
INTERNATIONAL TRUSTEE GROUP,
AND SYLVIA FORD BROWN, Chapter 13
Bankruptcy Trustee                                                    PLAINTIFFS

V.                                         CIVIL ACTION NO. 4:19-cv-00124-NBB-JMV

CONCEPT AG, LLC,
AGRISELECT, LLC,
STINE SEED COMPANY,
M.D. KEVIN COOPER,
GREG CRIGLER, KEVIN RYAN,
B&B, INC., AND MYRON STINE                                            DEFENDANTS

## <u>MEMORANDUM OPINION</u>

This cause comes before the court upon the motions and amended motions to dismiss filed by each of the defendants in this action. Upon due consideration of the motions, responses, and applicable authority, the court is ready to rule.

### Factual Background and Procedural Posture

Plaintiffs Thomas Burrell and David Allen Hall[1] are farming associates from Tennessee who together have managed 2,200 acres of farmland in Sunflower County, Mississippi, and 1,000 acres of farmland in the state of Louisiana. Plaintiffs Walter and Monique Jackson are a married couple who reside in Darling, Mississippi, and have successfully harvested soybeans and soybean seeds for the past eight years. Plaintiff Tyrone Grayer, a resident and farmer in Coahoma County, Mississippi, has managed 2,300 acres of farmland in Sunflower County for over twenty years. Plaintiff International Trustee Group, LLC, a Tennessee company, includes

---

[1] Hall filed Chapter 13 Bankruptcy and has been substituted as a plaintiff by Sylvia Ford Brown, Bankruptcy Trustee.

Burrell, Hall, and Grayer as "Farm Partners" associated with the company who collectively farm more than 2,200 acres of farmland in Rome, Mississippi.

Defendant Stine Seed Company is an Iowa company that markets over two hundred varieties of seed to large companies worldwide. Defendant Myron Stine, an Iowa resident, is president of the company. Defendant Kevin Ryan of Hot Springs Village, Arkansas, is the Regional Sales Agronomist for Stine Seed. Defendant Kevin Cooper, the District Sales Manager for Stine Seed and owner of defendant B&B, Inc., was a resident of Olive Branch, Mississippi, at all times relevant to this lawsuit. Defendant Concept Ag, a Missouri company, provides seed treatment for products sold in Mississippi, Illinois, Arkansas, and Missouri. Defendant Greg Crigler, a resident of Sledge, Mississippi, is a sales representative for Concept Ag. Finally, defendant AgriSelect, LLC, a North Carolina company, engages in the production and sale of herbicides and fertilizers.

Plaintiffs allege that plaintiffs Jackson and Grayer met defendant Cooper in Memphis, Tennessee, at the 67th Annual Mid-South Farm and Gin Show. Cooper introduced himself as a District Sales Manager of Stine Seed and allegedly informed Jackson and Grayer that Stine had certain soybean seeds suitable for Mississippi's growing conditions called the "Liberty Link" varieties. Jackson then passed this information along to the other plaintiffs. Soon thereafter, Jacksons and Hall allegedly received electronic applications sent by Cooper for the purpose of establishing credit with Stine. Cooper also sent Hall and Burrell, via email, applications for User Agreements with Stine. Plaintiffs allege they subsequently ordered a total of more than 12,000 pounds of Stine seeds.

Plaintiffs allege that Cooper and defendant Crigler – acting on behalf of defendant B&B and Concept Ag, respectively – engaged in an elaborate seed-swapping scheme whereby Cooper

and Crigler used a Sledge, Mississippi warehouse to swap out the Stine-certified seeds plaintiffs ordered with seeds of inferior quality that Crigler had allegedly stockpiled. Plaintiffs were then allegedly given the inferior seeds while Cooper and Crigler allegedly re-sold the higher quality seeds to other farmers. Plaintiffs allege that prior to their seed purchase, Cooper advised plaintiffs to have their seeds treated. Plaintiffs speculate that the coating and treating of seeds with inoculants with red and green coloring was a method to mask and camouflage the inferior seeds, giving them the appearance that they were new and of first generation progeny. This seed treatment allegedly occurred at the Sledge facility, which is also where the plaintiffs allege the seeds were swapped for inferior ones. The plaintiffs further speculate that Cooper and/or Crigler would place the inferior seeds into previously emptied Stine Seed bags. Plaintiffs argue that the tying of the bags reveals that the certified seeds were not removed from the bags by proper means, as there is a rip cord at the base of the bag which, when properly released, will dump the contents of the bag into a seed tender. According to plaintiffs, opening the bags from the top without use of the rip cord "reveals the intent to reuse the bag for refilling of coated non-certified seeds and subsequent transport of non-certified seeds to Plaintiffs."[2] [Doc. 66].

The allegedly inferior seeds did not develop as plaintiffs had expected, which Cooper explained could have been the result of "dicamba drift" or over-spraying. According to defendants, plaintiffs received at least $400,000.00 from the sale of the crops before deciding the

---

[2] In response to the defendants' motions to dismiss and the defendants' argument that seed bags, of necessity, must be opened and re-tied in order for the seeds to be treated, as requested by plaintiffs, plaintiffs now assert that a seed swap must have occurred because the shipment of plaintiffs' seeds to Concept Ag for treatment originated from a third party – the Riverbend Rice Company, a non-party to this action. First, plaintiffs may not introduce new facts and theories in an opposition brief to survive Rule 12(b)(6). Rule 12(b)(6) review is, of course, limited to the allegations in the pleadings. Second, Riverbend Rice Company is an authorized Stine Seed producer, and its purported involvement in the transactions at issue here does nothing to support the plausibility of plaintiffs' allegations of conspiracy and racketeering.

crop yield did not meet their expectations. Plaintiffs do not dispute that they failed to pay for the seeds and still owe money to Stine Seed. Plaintiff Jackson asserts he achieved a yield of 48 bushels per acre of soybeans in 2017 for fields planted with a different variety, "Delta Grow" seeds, but despite similar planting and growing conditions, the Stine "Liberty Link" seeds yielded only 24-25 bushels per acre. Plaintiffs Burrell and Grayer assert a yield of 35 bushels per acre with the exception of a 120-acre plot that yielded less than five bushels per acre.

After plaintiffs' inquiries to Myron Stine regarding the low yield, Stine Seed sent its regional agronomist, defendant Ryan, to plaintiffs' Rome, Mississippi operations. Cooper and Ryan met with Burrell and Hall. Ryan allegedly acknowledged that plaintiffs had a "yield problem" and, though declining to take samples personally, advised plaintiffs Hall and Burrell to send samples of seeds to an uninvolved third party, Mississippi State University, for testing. Plaintiffs allegedly did so, and the tests allegedly revealed that no germination took place from this particular sample of seeds, but the record is unclear as to whether the testing determined the origin of the seeds as Stine seeds or some other type.

Plaintiffs filed this action on April 19, 2018, in the United States District Court for the Western District of Tennessee and their amended complaint in the same court on September 25, 2018. Plaintiffs allege that all defendants are severally and collectively liable for their discriminatory treatment and fraudulent acts under federal and Tennessee state law. Plaintiffs contend that defendants, motivated by racial animus against black farmers, conspired to commit Racketeer Influenced and Corrupt Organizations ("RICO") violations by selling inferior seeds to minority farmers, causing losses and injuries to their businesses or property. Counts I – VI of the amended complaint raise numerous allegations of RICO violations under 18 U.S.C. §§ 1341, 1343, *et seq.*, and 18 U.S.C. §§ 1962(a) – (d). Count VII asserts claims of race discrimination in

4

the making and enforcing of contracts under 42 U.S.C. § 1981. Count VIII asserts a claim that defendants violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691. The remaining Counts IX – XIV allege claims under Tennessee state law for breach of contract, tortious interference with contract, intentional misrepresentation, fraud, promissory estoppel, civil conspiracy, and tortious interference with contractual relations.

The defendants filed motions to dismiss in the Western District of Tennessee under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, and 12(b)(6) for failure to state a claim. The Tennessee district court ultimately ordered, *sua sponte*, the case transferred to the Northern District of Mississippi pursuant to 28 U.S.C. § 1631, finding that this court is the more appropriate forum based on a lack of personal jurisdiction over a number of defendants in the Western District of Tennessee. Upon transfer to this court, the defendants each refiled their motions to dismiss, amending them to comport with Fifth Circuit case precedent.

<u>Standard of Review</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), a court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232-33 (5th Cir. 2009). The court is, however, not bound to accept as true legal conclusions couched as factual allegations. *Iqbal,* 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly,* 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand,* 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly,* 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007).

## Analysis

At the outset, the court finds that, as noted by defendants, plaintiffs have abandoned a number of claims by failing to defend them in response to defendants' motions to dismiss. The now abandoned claims are Count IV (RICO 18 U.S.C. § 1962(b)), Count V (RICO 18 U.S.C. § 1962(c)), Count VI (RICO 18 U.S.C. § 1962(d)), Count VIII (Equal Credit Opportunity Act), Count XII (Promissory Estoppel), Count XIII (Civil Conspiracy), and Count XIV (Tortious Interference with Contractual Relations). The court finds that these claims should be dismissed without further analysis due to plaintiffs' failure to raise arguments in support thereof.[3] *See Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001); *Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Marascalo v. Allstate Vehicle and Property Ins. Co.*, No. 4:18-cv-141-DMB-RP, 2020 WL 42893, at *5 n.7 (N.D. Miss. Jan. 3, 2020) (undefended claim deemed abandoned and dismissed).

---

[3] The court will dismiss the federal claims with prejudice, but the abandoned state claims will be dismissed without prejudice for reasons outlined below.

The court now turns to plaintiffs' federal claims not abandoned. Plaintiffs' Counts I and II assert RICO claims under 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud). These criminal statutes do not create a private cause of action and cannot serve as the basis for a civil complaint. *Napper v. Anderson, Henley, Shields, Bradford, and Pritchard*, 500 F.2d 634, 636 (5th Cir. 1974) (holding that the mail fraud statute, like the wire fraud statute, cannot give rise to a civil action); *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th Cir. 1977) (finding no private right of action under 18 U.S.C. § 1341). Accordingly, both Counts I and II fail as a matter of law and must be dismissed.

Count III brings claims under 18 U.S.C. § 1962(a), which prohibits a person from investing in a RICO enterprise any income derived from a pattern of racketeering activity. Section 1962(a) provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt … to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). The Fifth Circuit has held that "[t]o state a claim under [1962](a), a plaintiff must allege an injury from the use or investment of racketeering income." *Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007).

First, plaintiffs concede they never paid for the seed at issue. They cannot, therefore, now claim the Stine defendants (Stine Seed, Myron Stine, and Kevin Ryan) generated any income to reinvest in the alleged racketeering enterprise. Plaintiffs make a conclusory allegation that they "believe" that a payment of $8,000.00 made by plaintiff David Hall to defendant Kevin Cooper was subsequently reinvested into the purported RICO enterprise for the benefit of all defendants. This set of allegations defies the plausibility standard of Rule 12(b)(6), however.

Plaintiffs assert that defendant B&B, defendant Cooper's company, did not exist when plaintiffs met Cooper in April 2017. Plaintiffs assert that B&B was created from income derived from a pattern of racketeering activity by Cooper. Plaintiffs Hall and Burrell assert that on May 1, 2017, they ordered 500 bushels of seeds from Cooper and Stine and that Cooper informed them he had just formed B&B to perform seed treatments and recommended that the seeds plaintiffs had ordered be treated before delivery. The Amended Complaint states that plaintiff Hall "did send on July 18th, 2017, collectively ($3,000 and $5,000 checks respectively) EIGHT THOUSAND DOLLARS as per the request made on August 11th, 2017." [Doc. 66]. The court finds implausible, with no further explanation from plaintiffs, allegations that payments were made almost a month before they were requested, and the court declines then to take the speculative leap urged by the plaintiffs to find plausibility in the claim that Cooper founded B&B months prior in May 2017 with funds allegedly collected from plaintiffs in July 2017 for payments that were not billed until August 2017. It is implausible that Cooper could have formed B&B with money from the alleged seed-swapping scheme against plaintiffs prior to the time he is accused of implementing the alleged fraud. Further, plaintiffs do not allege that the seed treatments they received were inadequate, only that treating the seeds was a method to hide their allegedly inferior nature.

"An injury arising solely from the predicate racketeering acts themselves is not sufficient" to establish a § 1962(a) RICO claim. *Abraham*, 480 F.3d at 356. Further, "conclusory allegations are insufficient to state a claim under § 1962(a)." *Id.* at 357. The Amended Complaint is devoid of any non-conclusory allegation that plaintiffs' alleged injuries were caused by the defendants' "use and investment of income derived from the pattern of racketeering activity." *Id.* at 356-57. Instead, all purported injuries result from the alleged

predicate racketeering acts themselves, that is, mail and wire fraud – claims that, as addressed above, cannot survive Rule 12(b)(6) analysis, as the statutes prohibiting the activity do not create a private cause of action and cannot serve as the basis for a civil complaint.

To state a viable RICO claim under any theory, plaintiffs must allege the following elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009). "[T]he heart of any RICO complaint is the allegation of a pattern of racketeering." *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 154 (1987). To establish a pattern of racketeering, plaintiffs must identify predicate acts with "continuity plus relationship." *H.J., Inc. v. Northwest Bell Tel. Co.*, 492 U.S. 229, 239 (1989). To satisfy this element, plaintiffs must show that defendants participated in "two or more predicate criminal acts that are (a) related and (2) amount to or pose a threat of continued criminal activity." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 523-24 (5th Cir. 2016). The continuity prong requires a showing of either a close-ended or open-ended pattern. *H.J., Inc.*, 492 U.S. at 241-42.

Here, there is no close-ended pattern of racketeering. A close-ended pattern of racketeering is a "series of related predicate acts extending over a substantial period of time." *Id.* The inquiry focuses primarily on the length of time during which the alleged fraud occurred. *Id.* According to plaintiffs, the alleged scheme here lasted at most from March 2017, when Grayer and Jackson purportedly attended the farm show and learned about Stine's seeds, through January 2018, when Stine Seed repeatedly but unsuccessfully sought payment for the seeds – a period of only eleven months. The Fifth Circuit Court of Appeals has affirmed decisions holding that nine and ten-month periods were plainly inadequate to establish close-ended continuity.

*See, e.g.*, *Foster v. Capshaw*, 72 F. App'x 192 (5th Cir. 2003) (summarily affirming dismissal in an unpublished opinion because the alleged conduct over ten months was too "short-term" to implicate RICO); *Fowler v. Burns Int'l Sec. Servs., Inc.*, 763 F. Supp. 862 (N.D. Miss 1991), *aff'd* 979 F.2d 1534 (5th Cir. 1992) (unequivocally rejecting a continuity claim based on a nine-month duration). The Fifth Circuit has also explicitly endorsed decisions from other circuits holding ten to twelve months to be too short a duration to establish a close-ended continuity. *See Malvino v. Delluniversita*, 840 F.3d 223, 232 (5th Cir. 2016) (citing with approval *Wisdom v. First Midwest Bank*, 167 F.3d 402, 407 (8th Cir. 1999) (ten months) and *Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995) (twelve months)).

Close-ended continuity is also unestablished here because plaintiffs have "alleged as a pattern of racketeering activity nothing more than numerous predicate acts which were necessary segments of an otherwise legitimate and singular commercial endeavor." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988). In the present case, all of the alleged predicate acts were ordinary and necessary communications related to the sale of seed: transmission of credit applications and growers' agreements, communications regarding the transaction, and efforts to secure the contracted payment. None of these acts are alleged to be fraudulent in themselves. The Fifth Circuit has held, "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a pattern of racketeering activity has not been shown." *Word of Faith Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996).

Likewise, plaintiffs have failed to allege an open-ended pattern of racketeering. To do so, plaintiffs must show that defendants' conduct "by its nature projects into the future with a threat of repetition." *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 561 (5th

10

Cir. 2015). Plaintiffs plead no facts to establish that "the predicate acts themselves involve a distinct threat of long-term racketeering activity or are part of an ongoing entity's regular way of doing business." *Id.* Plaintiffs here fail to explain how defendants' allegedly fraudulent communications with specific plaintiffs regarding their seed purchases involve a distinct threat of ongoing racketeering activity; nor do they allege that defendants engaged in fraudulent communications as a part of its regular way of doing business. Plaintiffs have thus failed to plead a RICO scheme based on close-ended or open-ended continuity, and Count III fails as a matter of law. These shortcomings would also result in the failure of Counts IV, V, and VI had those claims not already been abandoned by plaintiffs.

Plaintiffs' RICO claims also fail because they did not plead facts sufficient to establish a racketeering enterprise. Plaintiffs allege that defendants Stine Seed, B&B, Concept Ag, and AgriSelect have "combined to form an association-in-fact criminal enterprise." [Doc. 66]. "An association in fact enterprise (1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization, and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1461 (5th Cir. 1991). To qualify as an association-in-fact enterprise, a group "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). "Moreover, plaintiffs must plead specific facts, not mere conclusory allegations, which establish the enterprise." *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987).

The factual allegations presented here fall short of these requirements. While plaintiffs identify four corporate defendants as the purported enterprise, they fail to allege any facts to

11

describe a hierarchical or consensual decision-making structure among defendants or to aver facts showing the four corporate defendants functioning as a continuing unit. Plaintiffs' failure to establish an enterprise further supports dismissal of the RICO claims. *See Montesano*, 818 F.2d at 427 (upholding RICO claim dismissal because plaintiffs failed to establish an enterprise). For the foregoing reasons, the plaintiffs' RICO claims which have not already been abandoned fail as a matter of law and must be dismissed.

The plaintiffs' remaining federal claim is Count VII, which asserts a claim of race discrimination in the making and enforcing of contracts under 42 U.S.C. § 1981. "Section 1981 offers relief when racial discrimination … impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). For their Section 1981 claim to survive Rule 12(b)(6) review, plaintiffs must specifically plead that defendants treated them in a discriminatory manner because of their race compared to similarly situated white farmers. The Fifth Circuit has explained that generalized allegations of disparate treatment of the plaintiffs compared to another non-minority are insufficient to survive a motion to dismiss. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381 (5th Cir. 2017). The allegations must be specific and identify the manner in "which defendant discriminated or specific instances when [plaintiff] was refused a contract but a similarly situated non-minority was given a contract." *Id.* Plaintiffs here have failed to identify any "comparators" or similarly situated non-minority farmers who were treated differently by defendants than plaintiffs. It is well settled that a plaintiff's speculative, subjective belief that he has been the subject of discrimination, no matter how genuinely held, when unsupported by any specific factual evidence, is insufficient to establish a claim under Section 1981 or, for that matter, any other anti-discrimination statute.

12

*See Vance v. Union Planters Corp.*, 209 F.3d 438, 444 (5th Cir. 2000). Absent any allegations of facts supporting a plausible Section 1981 claim, plaintiffs' subjective belief that they were discriminated against because of their race falls short of the Rule 12(b)(6) standard, and the Section 1981 claim, that is, Count VII, must be dismissed.

## Conclusion

This case was predicated on allegations of this court's federal question jurisdiction under 28 U.S.C. § 1331. Having dismissed the federal claims giving rise to the court's jurisdiction, the court declines to exercise supplemental jurisdiction over plaintiffs' Tennessee state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … (3) the district court has dismissed all claims over which it has original jurisdiction."). Plaintiffs' Tennessee state law claims will be dismissed without prejudice. Accepting plaintiffs' well-pleaded facts as true and drawing all reasonable inferences in favor of plaintiffs, the court finds no facial plausibility to plaintiffs' federal claims that would allow them to survive Rule 12(b)(6) review. Defendants' motions to dismiss are therefore well taken and should be granted. Plaintiffs' federal claims will be dismissed with prejudice. A separate order in accordance with this opinion shall issue this day.

This 30th day of September, 2020.

 /s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE

13